# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

No. 4:07-CV-79-FL

| | | |
|---|---|---|
| JOANNE COOK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for Judgment on the Pleadings **[DE's 20 & 23]**. The time for the parties to file any responses or replies has expired. Accordingly, these motions are now ripe for adjudication. Pursuant to 42 U.S. C. § 405(g) and § 1383(c)(3), the underlying action seeks judicial review of the final decision by the Defendant denying Plaintiff's application for Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for a memorandum and recommendation. For the reasons set forth herein, the undersigned RECOMMENDS that Plaintiff's Motion for Judgment on the Pleadings **[DE-20]** be DENIED and that Defendant's Cross-Motion for Judgment on the Pleadings **[DE-23]** be GRANTED.

## Statement of the Case

Plaintiff applied for SSI on March 31, 2004, alleging that she became unable to work on March 15, 2002, due to back problems, seizures, tuberculosis, and anxiety. [Tr.63-67, 81]. This application was denied at the initial and reconsideration levels of review. [Tr. 36-39,

43-46]. Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on December 4, 2006. The ALJ concluded that Plaintiff was not disabled during the relevant time period in a decision dated January 24, 2007. [Tr. 10-21]. On April 27, 2007, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Defendant. [Tr. 3-5]. Plaintiff filed the instant action on June 7, 2007. **[DE-4]**.

## **Standard of Review**

This Court is authorized to review the Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .

Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the

2

court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether the Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## **Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment. [Tr. 15]. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: 1) alcohol abuse; 2) cirrhosis; 3) knee joint effusion; 4) carpal tunnel syndrome, and 5) depression. [Tr.

3

15].[1]   In completing step three, however, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926)). [Tr. 15].

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to: 1) lift and carry up to ten pounds frequently and twenty pounds occasionally, 2) stand and walk up to six hours in an eight-hour workday; and 3) sit for up to six hours in an eight-hour workday with alternating sitting and standing. [Tr. 16].  In addition, Plaintiff is limited to simple, routine, repetitive tasks with only occasional contact with the public. [Tr. 16].  Furthermore, she cannot engage in frequent postural activities or constant use of her hands, and cannot be exposed to hazards such as machinery and heights. [Tr. 16].

A Vocational Expert ("VE") testified at the hearing that despite Plaintiff's limitations, she is capable of performing jobs that exist in the national economy. [Tr. 20].  After taking all of these factors into account, at step five of his analysis, the ALJ concluded that Plaintiff was not disabled. [Tr. 20].  In making this determination, the ALJ cited substantial evidence, a summary of which now follows.

In his decision, the ALJ noted that Plaintiff's complaints of chest and knee pain did not result in severe impairments. [Tr. 15].  For example, Plaintiff's medical records reveal

---

[1]  The ALJ noted that although Plaintiff complained of chest and knee pain, these impairments were not severe because they "did not result in more than a minimal limitation in her ability to perform her work-related activity." [Tr. 16].

that she had normal echocardiograms and her chest sounds were clear to auscultation. [Tr. 15, 197, 235, 241, 245, 247]. In addition, on March 9, 2006, Plaintiff's chest exam was unremarkable and she was in no respiratory distress. [Tr. 15, 195-97]. Furthermore, although Plaintiff has indicated that she has knee pain, she has had a good range of motion in her knee. [Tr. 15, 197].

With regard to her severe impairments, Plaintiff has an extensive history of alcohol abuse. [Tr. 16]. Her medical records indicate that she received treatment for this condition at the Whitakers Medical Center under the care of Nancy Truitt, FNP from April 12, 2002, through May 5, 2006. [Tr. 16]. However, Plaintiff reported that she has been drinking 40-ounces of beer every other day for the past thirty years. [Tr. 17, 196, 233]. The ALJ concluded that while Plaintiff's alcohol abuse was a severe impairment, it was not a disabling impairment consistent with Listing 12.09. [Tr. 16]. Specifically, the ALJ noted that the "evidence of record shows that the claimant has been able to function despite her history of alcohol abuse. . . ." [Tr. 16].

On July 6, 2004, Plaintiff was evaluated by Dr. Maqsood Ahmed for the North Carolina Department of Health and Human Services. [Tr. 17, 195-98]. Plaintiff presented with alcohol on her breath. [Tr. 17, 196]. During her examination, Dr. Ahmed noted that Plaintiff's muscle strength was a 5/5 except in her right knee, which was a 4/5 due to complaints of pain. Plaintiff also had negative straight leg raising bilaterally. [Tr. 17, 197]. Although Plaintiff's right knee pain prevented her from walking on heel and toe, and doing squat and rise, she did have a full range of motion in the knee. [Tr. 17, 197]. The doctor's

5

examination of her back was unremarkable. [Tr. 197]. He diagnosed her with alcohol abuse, right knee pain with small effusion, back pain, depression with a history of alcohol abuse, and alcohol related seizures. [Tr. 17, 197]. Specifically, the doctor noted that although Plaintiff did have a small effusion on her right knee, Plaintiff's main problem seemed to be alcohol abuse and malnutrition related to that abuse. [Tr. 17, 197].

Subsequent to Dr. Ahmed's physical examination, Plaintiff was referred to Dr. W. Jim Miller for a psychological evaluation on August 12, 2004. [Tr. 17, 200-203]. During the exam, Plaintiff was polite and did not seem to exaggerate or minimize her symptoms. [Tr. 201]. Her speech was clear, and her thoughts were coherent but distracted. Plaintiff denied suicidal or homicidal ideation, as well as any unusual ideas or beliefs. [Tr. 202]. Dr. Miller diagnosed Plaintiff with depressive disorder. [Tr. 17, 203]. He opined that Plaintiff is capable of understanding and retaining very simple instructions, but would have difficulty sustaining attention. [Tr. 17, 203]. He further stated that Plaintiff would be able to relate well to her co-workers and supervisors, but would have difficulty tolerating stress and pressures associated with day-to-day work activity. [Tr. 17, 203]. Ultimately, Dr. Miller concluded that Plaintiff appears to have mild depression. [Tr. 203].

On October 1, 2004, Plaintiff was examined by B. Mosby, a state agency medical consultant, for her RFC assessment. [Tr. 17, 204-11]. The examiner concluded that Plaintiff had a medium RFC and could: 1) lift and/or carry up to fifty pounds occasionally; 2) lift and/or carry up to twenty-five pounds frequently; 3) stand, sit, and/or walk for six hours in an eight-hour workday; and 4) perform unlimited pushing or pulling. [Tr. 17-18, 211, 205].

6

The examiner also noted that Plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations. [Tr. 18, 206-208].

A few days after her RFC assessment, Plaintiff was evaluated by state psychologist, Dr. Gloria Edmunds, for a psychiatric review on October 8, 2004. [Tr. 18, 212-25]. Dr. Edmunds opined that Plaintiff had: 1) a depressive disorder which was not otherwise specified; 2) behavioral or physical changes associated with the regular use of substances that effect the central nervous system; 3) mild restrictions in her activities of daily living; 4) moderate difficulties in maintaining social functioning; and 5) moderate difficulties in maintaining concentration, persistence, or pace. She concluded that there was insufficient evidence to establish that Plaintiff experienced episodes of decompensation. [Tr. 18, 215, 220, 222].

That same day, Dr. Edmunds also completed a mental RFC assessment and she opined that Plaintiff was moderately limited in her ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 5) complete a normal workday and workweek without interruptions from psychologically based symptoms; and 6) perform at a consistent pace without an unreasonable number and length of rest periods. [Tr. 18, 226-27]. Ultimately, she concluded that Plaintiff is capable of: 1) understanding and following simple directions; 2) sustaining attention to simple, repetitive, and routine tasks; and 3) adapting to simple changes. [Tr. 18, 228]. Dr. Edmunds also concluded that Plaintiff would best function

7

in a setting that does not require extensive public contact. [Tr. 18, 228].

Plaintiff was admitted to Nash Health Care Systems' emergency department on October 11, 2004, with complaints of chest pain, nausea, vomiting, and an episode of almost passing out with jerking of the upper extremities. [Tr. 18, 230-45]. The treatment notes from this visit indicate that Coastal Plains Hospital had been trying to get Plaintiff admitted to a rehabilitation facility for her alcohol abuse, but Plaintiff refused to seek treatment. [Tr. 18, 231]. During her visit to the emergency department, the treating physician diagnosed Plaintiff with chest pain, but ruled out myocardial infarction. [Tr. 18, 230]. He also opined that she had near syncope, alcohol abuse with withdrawal symptoms, but ruled out a seizure, a urinary tract infection, and gallstones. [Tr. 18, 235]. Plaintiff was discharged on October 15, 2004, in stable condition and was directed to follow-up with her primary care physicians. [Tr. 18, 231, 232].

As a follow-up to her emergency room visit, Plaintiff was evaluated by Dr. Sudhir Prasada on October 28, 2004, at the Boice-Willis Clinic, P.A. [Tr. 18, 249]. Plaintiff reported that since her discharge, she had more chest pain that usually occurred at night, and was a pressure-like discomfort that lasted 1 to 2 hours. [Tr. 18, 249]. For her physical examination, Dr. Prasada noted that her chest was clear, but Plaintiff had some chest wall tenderness at the left and right costochondral junction. [Tr. 249]. He diagnosed her with recurrent chest pain, chest wall tenderness, and pressure-like discomfort that could be angina. [Tr. 249]. He placed her on aspirin, and prescribed Toprol for treatment of her condition. [Tr. 249].

8

Plaintiff was admitted again to Nash Health Care System on March 10, 2005. [Tr. 18, 250-59]. She complained of severe abdominal and back pain, and the inability to hold anything in her stomach. [Tr. 18, 250]. During her examination, she progressed into delirium tremens. [Tr. 18, 250]. Her treating physician's primary diagnosis was acute pancreatitis; the secondary diagnoses were hypertriglyceridemia, hypothyroidism, alcoholism, hypertension, delirium tremens, amenia, and dehydration. [Tr. 18, 250]. She was discharged on March 15, 2005, with only minimal abdominal pain and directed to follow up with her doctor in two weeks. [Tr. 18, 250].

On March 9, 2006, Plaintiff was evaluated again at the Boice-Willis Clinic by Dr. Mitchell Mah'moud for management of her cirrhosis. [Tr. 18, 246, 247]. Plaintiff reported that she had a history of excessive alcohol consumption, and admitted that she drank alcohol that past weekend. [Tr. 18, 246]. Based on his assessments during her exam, Dr. Mah'moud concluded that Plaintiff had a pattern of liver enzyme abnormalities that was highly suggestive of either hepatocellular injury or advanced fibrosis such as cirrhosis. [Tr. 18, 247]. The doctor advised Plaintiff to abstain from any future alcohol intake. [Tr. 18, 247].

During the hearing in this matter, Plaintiff testified that she has had back problems, chest pain, a history of scoliosis, and a recent detection of osteoporosis. [Tr. 17, 267]. Tendonitis in her hands requires her to wear wrist braces in the daytime and sometimes at night. Plantiff also indicated that her legs "give way." [Tr. 17, 268-69]. In addition, Plaintiff stated that she had been drinking for many years, and had been treated for cirrhosis and pancreatitis, but revealed that she had just discontinued drinking in August 2006. [Tr. 17,

9

269].

Plaintiff denied any emotional problems that might affect her ability to think or get along with others. [Tr. 17, 270]. However, she did report constant pain, which she treats with medication and walking around. [Tr. 17, 270]. She stated that during the hearing, her pain was a six, on a scale of one to ten, but in general, the pain is a seven or an eight. [Tr. 17, 274]. She further reported that her hands get weak at times and she tends to drop things. [Tr. 17, 275]. In addition, she can only walk for five minutes before stopping, sit only for a few minutes, and lift nothing heavier than 5 pounds. [Tr. 17, 271-72].

> With regards to Plaintiff's testimony, the ALJ made the following findings:
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
> . . . .
> The claimant's physicians never indicated that the claimant's impairments could reasonably be expected to result in any work-related limitations. She has not been treated by a psychiatrist or any mental health facility.
> Although the claimant stated that she recently stopped using alcohol, there is no evidence in the record to substantiate that the claimant has ceased drinking. As a matter of fact, the record shows that the claimant smelled of alcohol during her consultative evaluation of August 12, 2004. It was also noted in a hospitalization of October 2004 that the claimant refused to seek treatment for her alcoholism.
>
> [Tr. 19] (internal citations omitted).

In addition to Plaintiff's testimony, the ALJ also weighed the RFC and mental assessments performed by the state agency consultants. [Tr. 16, 19]. The ALJ concluded that Mr. Mosby's assessment "fail[ed] to give sufficient consideration to the claimant's

10

impairments and limitations arising therefrom," and therefore he would not adopt these

findings. [Tr. 19]. However, the ALJ did adopt Dr. Edmunds' findings, specifically, her

opinions that Plaintiff has mild restrictions of activities of daily living, mild difficulties in

maintaining social functioning, moderate difficulties in maintaining concentration,

persistence or pace, and no episode of decompensation. [Tr. 16, 215, 220, 222]. In addition,

the ALJ gave considerable weight to Dr. Edmunds' psychological assessment of Plaintiff's

abilities, which indicated that Plaintiff had – at most – moderate functional limitations in

restrictions of understanding and memory, sustained concentration and persistence, social

interaction, and adaption, and the ability to function in a work setting that does not require

extensive public contact. [Tr. 16, 228].

After weighing all of these assessments, the ALJ reduced Plaintiff's RFC to light

work, and concluded that because of her mental disorders, she should be further restricted

to performing unskilled, simple, routine, and repetitive tasks with only occasional public

contact. [Tr. 19]. In addition, because of her physical restrictions, she must have a sit/stand

option for the work that she performs. [Tr. 19].

The VE, Stephen Carpenter, testified during the hearing that Plaintiff's past relevant

work as a fast food operator is categorized as requiring light physical exertion according to

the Dictionary of Occupational Titles ("DOT"). [Tr. 19, 281]. However, because of

Plaintiff's RFC, and mental and physical limitations, the ALJ concluded that she was unable

to perform the duties of her past relevant work. [Tr. 19]. Thus, "[t]o determine the extent to

which [Plaintiff's] limitations erode the occupational base of unskilled work at all exertional

levels, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual

with [Plaintiff's] age, education, work experience, and [RFC]." [Tr. 20]. The VE testified

that based on Plaintiff's background, she would be able to perform the requirements of

representative occupations such as photocopy machine operator (DOT #207.685-014, SVP

=2, light), inserting machine operator (DOT #208.685-018, SVP=2, light), and mail clerk

(DOT #209.687-26, SVP = 2, light). [Tr. 20, 281-82]. The VE's opinions were consistent

with the information contained in the DOT. [Tr. 20].

The ALJ found that Plaintiff was capable of making a successful adjustment to other

work that exists in significant numbers in the national economy. [Tr. 20]. He also found that

Plaintiff had not been under a "disability" as defined by the Social Security Act since March

31, 2004, the date her application was filed. [Tr. 20].

Although Plaintiff cites two assignments of error, both essentially challenge the ALJ's

credibility determination. **[DE-20-2, pgs. 7-13]**. In assessing a claimant's credibility, an ALJ

must consider the entire case record, giving specific reasons for the weight to be given to the

individual's statements, and must consider specific factors in his or her assessment. See 20

C.F.R. §§ 404.1529, 416.929; SSR 96-7p. In this case, the ALJ properly addressed

Plaintiff's credibility according to the regulations, Social Security Rulings, and relevant case

law. In the order the ALJ stated:

> In making [his] assessment, [he] has evaluated all of the claimant's symptoms,
> including pain, in accordance with 20 CFR 404 1529 and 416.929, Social
> Security Rulings (SSR) 96-3p, 96-4p, 96-7p, and Fourth Circuit law, including
> Hyatt v. Sullivan. In accordance with the above, once the medical signs or
> laboratory findings show that the claimant has a medically determinable

impairment that could reasonably be expected to produce the alleged symptoms, such as pain, the Administrative Law Judge must evaluate the alleged intensity and persistence of the claimant's symptoms by considering all of the available evidence.

The undersigned has not required the presence of objective medical evidence in determining the intensity and persistence of the pain and other symptoms alleged. Rather, the Administrative Law Judge has specifically considered the nature, location, onset, duration, frequency, radiation, and intensity of any symptom, including pain; the precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any medication; the treatment, other than medication, for relief of pain or other symptoms the claimant has undergone; the alleged functional restrictions; and the claimant's daily activities.

[Tr. 18-19].

The ALJ concluded that although the evidence of record reveals that Plaintiff has medically determinable impairments that could reasonably be expected to produce the pain and other symptoms she has alleged, her statements about the intensity, persistence, and limiting effects of these symptoms were not entirely credible. [Tr. 17, 19]. In support of his determination, the ALJ cited substantial evidence, which has been discussed above.

"In reviewing for substantial evidence, the Court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary." Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589). More importantly, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). Accordingly, because the ALJ's credibility determination is supported by substantial evidence, Plaintiff's arguments are without merit.

13

As a corollary to Plaintiff's credibility argument, she also asserts that the ALJ's RFC determination was improper because he did not adopt Dr. Miller's opinions from his psychological evaluation. **[DE-20-2, pgs. 11-12]**. This argument is equally unpersuasive. In his decision, the ALJ did in fact adopt part of Dr. Miller's findings, specifically, those that concluded that Plaintiff had the ability to understand and retain very simple instructions, but also had moderate difficulty in maintaining concentration. [Tr. 16, 203]. However, the ALJ ultimately rejected the doctor's opinion that Plaintiff "would have difficulty tolerating stress and pressures associated with day-to-day work activity." [Tr. 16]. None of Plaintiff's treating physicians ever noted that Plaintiff had these types of limitations, nor did the other non-examining consultants. [Tr. 19]. Accordingly, this argument is without merit as well.

## Conclusion

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-20]** be DENIED, and that the Defendant's Motion for Judgment on the Pleadings **[DE-23]** be GRANTED.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 5th day of December, 2008.

_____
William A. Webb
U.S. Magistrate Judge

14

15